*United States Bankruptcy Court*
*District of New Jersey*
*Clarkson S. Fisher Federal Building*
*United States Courthouse*
*402 East State Street*
*Trenton, New Jersey 08608*

*Hon. Kathryn C. Ferguson*             *(609) 858-9351*
*Chief Bankruptcy Judge*

## **LETTER DECISION**

June 26, 2017

Michael A. Artis, Esquire
United States Department of Justice
Office of the United States Trustee
One Newark Center – Suite 2100
Newark, New Jersey 07102

David E. Shaver, Esquire
Broege, Neumann, Fischer & Shaver
25 Abe Voorhees Drive
Manasquan, New Jersey 08736

        Re:     John Peter DeAlto - Case No. 15-13173

                Andrew R. Vara vs. John Peter DeAlto
                Adversary No. 15-2303

                Motion for Summary Judgment (Document #15)
                Hearing Date: March 7, 2017

Dear Counsel:

      The United States Trustee filed a four-count complaint seeking denial of a discharge pursuant to 11 U.S.C. § 727(a)(2)(A); (a)(4)(A); (a)(5); and (a)(3). In January 2017, the United States Trustee ("UST") filed a motion for summary judgment. The Debtor filed opposition on

February 28, and the UST filed a response on March 3. After taking oral argument, the court reserved decision. The following is the court's decision on the motion.[1]

Federal Rule of Civil Procedure 56(a) provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] In undertaking this analysis, the court must view the facts in the light most favorable to the non-moving party.[3] "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."[4] The moving party bears the initial burden of showing the absence of a genuine issue of material fact but meeting this obligation shifts the burden to the non-moving party. The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial."[5]

The UST seeks to deny the Debtor a discharge based on various sub-sections of § 727. It is well-settled law that denial of a debtor's discharge is a drastic remedy; therefore, section 727 must be construed strictly in favor of the debtor.[6] The burden of proof in a denial of discharge complaint is on the objecting party.[7] Neither the Bankruptcy Code nor the Bankruptcy Rules address the standard of proof under section 727(a), and the issue remains unsettled in the federal courts.[8] The United States Supreme Court decided that the appropriate standard of proof in a

---

[1] This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) (objections to discharge)
[2] Fed. R. Civ. P. 56(a)
[3] Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010)
[4] Id. at 268
[5] Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986)
[6] *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge … is an extreme step and should not be taken lightly")
[7] *Haupt v. Belonzi (In re Belonzi)*, 476 B.R. 899 (Bankr. W.D. Pa. 2012); s*ee also*, Fed. R. Bankr. P. 4005 ("on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.")
[8] *See, In re Mayo*, 94 Bankr. 315 (Bankr. D. Vt. 1988) (stating that the cases dealing with the issue of the standard of proof under section 727(a) are unreconcilably conflicting).

2

§ 523 cases is preponderance of the evidence.[9] The *Grogan* court noted that Congress chose the preponderance standard to govern determinations under 11 U.S.C. § 727(a)(4), which denies a debtor the right to discharge altogether if the debtor has committed a fraud on the bankruptcy court.[10] Based on the reasoning in *Grogan* and other authorities[11] addressing the issue, this court applies a preponderance of the evidence standard to all subsections of § 727(a).

The First[12] and Second[13] Counts of the Complaint expressly require the court to find that the Debtor acted with fraudulent intent. It is well established that when a party charged with fraudulent intent denies it, resolution of the issue by summary judgment is extremely difficult.[14] That is not to say it is impossible. When a party's denial of fraudulent intent is "so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it," summary judgment may be appropriate.[15]

In this case, the Debtor has categorically denied that he "intentionally committed fraudulent acts designed to secret assets from my Creditors."[16] An unsupported denial of fraudulent intent would not be enough to defeat summary judgment, but here the Debtor's denial is also supported by other undisputed facts. The first is that the Debtor voluntarily disclosed on his petition and schedules all of his bank and financial accounts and the non-exempt cash in those accounts. The second is that the Debtor's former counsel has submitted a certification

---

[9] *Grogan v. Garner*, 498 U.S. 279 (1991)
[10] *See*, H.R. Rep. No. 95-595, p. 384 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6340 ("The fourth ground for denial of discharge is the commission of a bankruptcy crime, though the standard of proof is preponderance of the evidence"); S. Rep. No. 95-989, p. 98 (1978), U.S. Code Cong. & Admin. News 1978, p. 5884
[11] Craig A. Barbarosh, APPLICATION OF A HEIGHTENED STANDARD OF PROOF: NOT VERY CLEAR AND CONVINCING UNDER 11 U.S.C. SECTION 727(A), Pacific L.J. (July 1991)
[12] 11 U.S.C. § 727(a)(2)(A) ("with intent to hinder, delay, or defraud ….")
[13] 11 U.S.C. § 727(a)(4)(A) ("knowingly and fraudulently ….")
[14] *In re Grube*, 462 B.R. 663, 664 (Bankr. C.D. Ill. 2012)
[15] *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998); *see also*, *In re Gertsch*, 237 B.R. 160, 165 (9th Cir. BAP 1999) (summary judgment on issue of intent "is appropriate if all reasonable inferences defeat the claims of one side")
[16] Cert. of John DeAlto at 2

stating that she advised him not to include any of his vehicle transfers because they did not involve property of the estate.[17] Because this is a summary judgment motion, the court must accept all factual allegations as true and draw all inferences in favor of the non-moving party. As previously noted, the issue of intent is ordinarily not suitable for disposition on summary judgment, and this is not one of the unusual situations where "the evidence is so one sided that reasonable minds could not differ as to the only rationale outcome …."[18] Therefore, the court denies summary judgment on Counts One and Two.

The Third Count is based on § 727(a)(5), which prevents a discharge if a "debtor has failed to explain satisfactorily … any loss of assets or deficiency of assets to meet the debtor's liabilities."[19] Under § 727(a)(5), an objecting party bears the initial burden of proof and must demonstrate: (1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets.[20] Once the creditor has made a prima facie case, the debtor must offer credible evidence regarding the disposition of the missing assets.[21]

The court finds that the UST has meet its initial burden. The evidence shows that hundreds of thousands of dollars were liquidated from the Bank of America checking account and the RBC Investment Account in the year prior to filing. The evidence also demonstrates that those assets are largely unavailable to pay creditors. Specifically, the Debtor deposited

---

[17] Cert. of Marybeth Schroeder at 5
[18] *In re Mickletz*, 544 B.R. 804 (Bankr. E.D. Pa. 2016) (internal citations omitted)
[19] 11 U.S.C. § 727(a)(5)
[20] *In re Retz*, 606 F.3d 1189 (9th Cir. BAP 2010)
[21] *Id.*

$445,942.18 into his checking account in the year prior to filing. The Debtor also wrote checks out of his investment account totaling $381,907.47.[22] Yet, as of the date of filing, the Debtor reported only $200 cash-on-hand. Nothing in the Debtor's schedules or Statement of Financial Affairs adequately explains how $827,849.65 was used. Schedule J indicates that the Debtor's living expenses are $21,138 a month ($253,656 a year) leaving $574,193.65 unaccounted for.

In the shifting burden under § 727(a)(5), once a creditor makes out a prima facie case, the debtor must offer a satisfactory explanation of the disposition of the assets.[23] Courts have held that "explanations of a generalized, vague, indefinite nature such as assets being spent on 'living expenses,' unsupported by documentation, are unsatisfactory."[24] At a deposition, the UST asked the Debtor to explain the disposition of a $70,000 check dated October 25, 2014 from the RBC Investment Account made payable to himself.[25] Despite the fact that this was only 4 months prior to his bankruptcy filing, the Debtor replied: "I don't recall. I think I just transferred a dollar amount to my personal account and I forgot what the instructions were from my attorney after that. I don't know if I ended up spending the money or – I didn't send it to Wells Fargo, I can tell you that much."[26] The Debtor's deposition testimony and testimony at his 2004 exam are rife with similarly vague statements regarding the disposition of assets. These vague statements do not carry the Debtor's burden of offering credible evidence. This is a motion for summary judgment; however, and given that credibility - like intent - is difficult to determine without a trial, the court will partially deny summary judgment on the Third Count.

---

[22] Cert. of Kirsten Ardelean; Ex. T
[23] *In re Park*, -- Fed. Appx. --, 2017 WL 1019044 (March 15, 2017) (citing *In re Simmons*, 525 B.R. 543 (1st Cir. BAP 2015), *aff'd*, 810 F.3d 852 (1st Cir. 2016))
[24] *In re Mezvinsky*, 265 B.R. 681, 690 (Bankr. E.D. Pa. 2001)
[25] Cert. of Kirsten Ardelean, Ex. D, 158:20-24; Ex. O [copy of the check]
[26] Cert. of Kirsten Ardelean, Ex. D, 159:20-25

The Fourth Count is based on § 727(a)(3), which prohibits discharge when a debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."[27] To state a claim under § 727(a)(3), "a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions."[28] "The Bankruptcy Code does not ... require an impeccable system of bookkeeping," so long as "the records ... sufficiently identify the transactions [so] that intelligent inquiry can be made of them."[29] Fraudulent intent is not an element of this cause of action.[30]

The UST asserts that the Debtor has not satisfactorily explained the numerous pre-petition transfers from the Bank of America checking account, including multiple checks related to motor vehicle transactions and several checks reflecting transfers to insiders. The court agrees. Section 727(a)(3) "ensures that trustees will receive sufficient information to reconstruct the debtor's financial dealings. The burden is not on the trustee to organize and reconstruct the debtor's business affairs."[31] The Debtor insists that he "provided full and complete financial disclosure to both the Chapter 7 Trustee, and to the Office of the United States Trustee, and … provided complete, voluminous, and well organized banking and financial documents pertaining to all my financial accounts and financial affairs." While that may be true, what has been provided is insufficient for the UST, and more significantly the court, to decipher the Debtor's

---

[27] 11 U.S.C. § 727(a)(3)
[28] *In re Park*, -- Fed. Appx. --, 2017 WL 1019044 (March 15, 2017) (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992))
[29] *Meridian*, 958 F.2d at 1230
[30] *In re Kennedy*, 566 B.R. 690 (Bankr. D.N.J. 2017)
[31] *In re Lawrence*, 227 B.R. 907, 915–16 (Bankr. S.D. Fla. 1998)

financial dealings. There were purported loans to friends and family members that have no associated records. At his deposition, the Debtor was asked about a $6,000 check made payable to his cousin Gonzalo Morales. Mr. DeAlto said he was loaning the money to Mr. Morales so that Mr. Morales could purchase life insurance. The UST asked the Debtor if there was any evidence of this loan such a promissory note and he said no.[32] That transaction occurred five months before filing, but the Debtor did not list the loan as a receivable on his bankruptcy petition. The same is true for a $6,000 check made payable to the Debtor's friend David Vuolo in December 2014. Mr. DeAlto testified that the money was a "bridge loan" and that there was no promissory note or other documentation. The Debtor testified that the loan was repaid, but could not recall when he received the funds.[33] When asked if there was any documentation indicating that the loan had been paid back, the Debtor replied "those are handshake deals."[34] Also in December 2014, the Debtor wrote a check for $5,500 payable to Mr. Vuolo. The Debtor testified at his deposition that it was another "bridge loan" and that he could not recall if it had been repaid.[35]

Of even greater concern to the court is the nonexistent record keeping for the debtor's hobby as a "car enthusiast." The only records that have been provided regarding the Debtor's vehicle transactions are checks, but those checks do not allow the court or creditors to fully trace transactions. Even the Debtor cannot reliably reconstruct those transactions.

At his December 8, 2016 deposition, Mr. DeAlto was asked to explain a check dated December 31, 2014, in the amount of $8,500, made payable to Vuolo Autos with the word

---

[32] Dep. of John DeAlto at 74 [Cert. of Kirsten Ardelean; Ex. D]
[33] Dep. of John DeAlto at 93
[34] Dep. of John DeAlto at 93
[35] Dep. of John DeAlto at 94 - 96

"Volvo" on the reference line.[36] The Debtor testified: "I probably bought a Volvo."[37] When asked what became of the Volvo, the Defendant testified: "I don't recall. I don't even remember the car."[38] The Debtor was also asked to explain a January 12, 2015 check[39] he received from Vuolos Auto in the amount of $11,800.00, which was deposited into his Bank of America checking account within forty-five days of the petition date. The check references an '03 Chevy and an '08 Volvo. The Debtor testified he was paid a month later for the '08 Volvo, and he couldn't remember anything about the '03 Chevy.[40] The Debtor was asked to explain a January 28, 2015 check in the amount of $8,000.00 that he received from Vuolos Auto.[41] The check's reference line says "Van." This check was received and deposited within forty-five days of the petition date. The Defendant testified: "It's obviously some kind of vehicle purchase, something I did not take title to, something that I did not transfer into my name or register."[42] The Debtor further testified that the loan "was probably paid before the petition."[43] The Debtor was asked to explain the disposition of a January 29, 2015 check in the amount of $17,000.00 that he received from Vuolos Auto. The check's reference line states "01 Miata, a '06 E250, and a '04 BMW."[44] The Debtor testified he didn't sell the vehicles directly rather "he facilitated the transaction.".[45] He stated that the check was written to acquire the three vehicles.[46] Yet, when pressed further, the Debtor admitted that could not remember how he acquired the three

---

[36] Cert. of Kirsten Ardelean; Ex. E
[37] Dep. of John DeAlto at 102:4-15
[38] Dep. of John DeAlto at 103:21-25
[39] Cert. of Kirsten Ardelean.; Ex. F
[40] Dep. of John DeAlto at 107:16-18
[41] Cert. of Kristen Ardelean; Ex. G
[42] Dep. of John DeAlto at 117:19-24
[43] Dep. of John DeAlto at 119:5-7
[44] Cert. of Kristen Ardelean; Ex. H
[45] 121:11-14
[46] 121:15-18

vehicles.[47] Finally, Mr. DeAlto was asked about a transaction that occurred just 3 weeks before his bankruptcy filing involving a check in the amount of $8,000 made payable to Vuolos Auto for a "Highlander."[48] Debtor testified that it "appears" that I bought the vehicle from Mr. Vuolos.[49] When asked about the disposition of the vehicle, the Defendant testified: "It's obviously gone, because I do not have it, so it was sold."[50]

The Debtor insists the he "derived absolutely no income from advancing monies for the purchase of vehicles by Mr. Vuolo and/or his business ….," but he lacks even a modicum of documentation to back up that statement. The court cannot simply take the Debtor at his word. The Debtor has not produced a shred of corroborating evidence or record keeping – not a spread sheet or even a notebook page that shows money going out and then coming back into his accounts in the exact same amount for these vehicle transactions. "No one is obligated to recreate the Debtor's financial affairs; that task is his alone."[51]  Mr. DeAlto failed at that task.

While the objections to discharge found in § 727 are to be strictly construed against the creditor and liberally in favor of the debtor, a discharge in bankruptcy is not a right - it is a privilege that must be earned. Upon filing for bankruptcy, it is the debtor's obligation to be forthright in providing financial information.  The checks and account statements the Debtor produced are inadequate to allow the court to make sense of the Debtor's financial dealings.  So, for purposes of § 727(a)(3), the court finds that the Debtor "failed to keep or preserve any

---

[47] 121:21-23
[48] Ex. I
[49] 123:9-10
[50] 123:19-20
[51] *Goldberg ex rel. Lawrence v. Lawrence (In re Lawrence)*, 227 B.R. 907, 915 (Bankr.S.D.Fla.1998) (citing legislative history of 11 U.S.C. § 521 (debtor's duties))

recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained."

A discharge will not be denied; however, if "such act or failure to act was justified under all of the circumstances of the case." Mr. DeAlto takes the position that his lack of record keeping was justified because he was not experiencing any financial difficulties. His cavalier attitude about loaning money, even on the eve of his bankruptcy filing, is evident from the following exchange at his deposition:

> UST: So anytime Mr. Vuolo needed money, he could come to you and you would loan him the money?
>
> Debtor: Sure, yes.
>
> UST: Okay. And this – was this during the period when you were experiencing financial difficulties?
>
> Debtor: No.
>
> UST: Okay. So in 12 – December of 2014, roughly two months before the bankruptcy, you weren't experiencing any financial difficulties, you were loaning monies?
>
> Debtor: No.
>
> UST: You had no financial difficulties at that time?
>
> Debtor: Obviously not.[52]

Those statements are directly contradicted by the Debtor's certification in opposition to this summary judgment motion in which the Debtor stated that he sought bankruptcy relief to "avoid the financial and professional implications of a possible Arbitration Award against me in connection with a FINRA Arbitration proceeding that had been brought against me by my former employer Wells Fargo … I knew that I did not have the financial resources to respond to a

---

[52] Dep. of John DeAlto at 94 - 95

possible six-figure Arbitration Award against me ….”[53] The FINRA action the Debtor referenced was filed in 2013. So, at the time the Debtor was freely loaning money to family and friends and engaging in floor plan financing for his friend's auto dealership, he was aware of the possibility that an almost $600,000 judgment might be entered against him. It is against that backdrop that the Debtor's failure to keep proper records is unjustified. If there were no lawsuit pending against him, then treating his floor plan financing as a mere "hobby" and freely giving out money to family and friends might be justified, but that was not the case. Additionally, if Mr. DeAlto's financial transactions were simple and straightforward then perhaps the bank statements and cancelled checks he produced might be enough to allow creditors and the court to understand his finances. But Mr. DeAlto's finances were anything but simple and straightforward. Mr. DeAlto's non-existent record keeping was not justified given the complexity of his business dealings and financial affairs. A debtor's failure to maintain records must be justified based on "all the circumstances of the case," and here it was not.

Conclusion

Summary judgment is denied on the First and Second Counts of the complaint. Summary judgment is granted in part and denied in part on the Third Count of the complaint.[54] Summary judgment is granted in favor of the UST and against the Debtor on the Fourth Count of the complaint. The Debtor is denied a discharge pursuant to 11 U.S.C. § 727(a)(3). Counsel for the Plaintiff should submit a proposed order in accordance with this opinion.

/s/ Kathryn C. Ferguson<br>KATHRYN C. FERGUSON<br>US Bankruptcy Judge

---

[53] Cert. of John DeAlto at 8
[54] Given the result on the Fourth Count, a trial is unnecessary. Had this matter gone to trial on the Third Count it would be limited to the issue of intent.